IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 4:08-cv-443 |
| | § | |
| RENDA MARINE, INC. | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION & ORDER DENYING DEFENDANT'S
MOTION FOR PARTIAL DISMISSAL FOR LACK OF JURISDICTION,
GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS, AND
DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the court are:

- "Defendant Renda Marine, Inc.'s Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction" (Dkt. 14);

- "Plaintiff United States' Motion for Judgment on the Pleadings" (Dkt. 15.); and

- "Defendant Renda Marine, Inc.'s Motion for Partial Summary Judgment" (Dkt. 16.).

Having considered the parties' motions, the responsive briefing, and the relevant legal principals, "Defendant Renda Marine, Inc.'s Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction" (Dkt. 14.) is **DENIED**, "Plaintiff United States' Motion for Judgment on the Pleadings" (Dkt. 15.) is **GRANTED**, and "Defendant Renda Marine, Inc.'s Motion for Partial Summary Judgment" (Dkt. 16.) is **DENIED**.

## I. BACKGROUND

This is a government contract case. Renda Marine, Inc. ("Renda") is a Texas corporation

located in Roanoke, Texas. In October 1998, the Army Corps of Engineers ("the Corps") entered into a contract with Renda to dredge a reach of the Houston Ship Channel known as the Upper Bayou and to construct containment levees and other structures at the Lost Lake Placement Area, a disposal facility for dredge material ("the Upper Bayou Contract"). During performance of the Upper Bayou Contract, Renda experienced difficulties with its dredging and construction work. According to Renda, it encountered unexpected site conditions that made completion of the work at the original contract price impossible. Because of these difficulties, Renda sought additional compensation from the Corps to complete the work. Renda and the Corps agreed on an amount of additional compensation for some of the issues encountered, but were unable to agree on the final amount of additional compensation. To resolve these disputes, Renda submitted claims for additional compensation to a contracting officer pursuant to the Contract Disputes Act ("CDA"). Renda's claims were considered by a contracting officer and when Renda was not awarded the entire amount sought, it filed suit in the Court of Federal Claims ("CFC"). *See Renda Marine, Inc. v. United States*, 66 Fed. Cl. 639 (2005), *aff'd*, 509 F.3d 1372 (Fed. Cir. 2007).

On November 26, 2002, while Renda's suit was pending before the CFC, the contracting officer issued a final decision under the contract asserting six separate government claims against Renda. The total amount of these government claims was $11,860,016. Under the CDA, Renda had 90 days to appeal this decision to the Armed Services Board of Contract Appeals or twelve months to initiate an action in the CFC. Renda did not pursue either course. Instead, on July 1, 2004, Renda sought leave to amend its complaint in the ongoing CFC litigation to challenge the contracting officer's decision. The CFC denied Renda's motion for leave to amend and the Federal Circuit affirmed. *Renda Marine, Inc. v. United States*, 509 F.3d 1372, 1378–79 (Fed.

2

Cir. 2007).

The United States filed this lawsuit on behalf of the Corps to enforce the decision of the CFC. In Count I, the United States alleges that Renda owes the Corps $11,860,016 relating to the Upper Bayou Contract. According to Plaintiff, this government claim was resolved in a final decision of a contracting officer and determined to be final and conclusive by the CFC. In Count II, the United States seeks repayment of $3,083,833 that the Corps paid Renda in excess of the original contract price on the Upper Bayou Contract. According to the United States, the CFC determined Renda was not entitled to this amount. Although Renda admits to the contract disputes alleged by the United States, it denies that the United States has enforceable judgments against it.

On September 30, 2009, Defendant filed a motion for partial dismissal (Dkt. 14.), arguing this court lacks subject matter jurisdiction over Count II of the Complaint. Then on October 2, 2009, Plaintiff filed a motion for judgment on the pleadings (Dkt. 15.) and Defendant filed a motion for partial summary judgment (Dkt. 16.). In its motion for judgment on the pleadings, Plaintiff seeks entry of judgment on Counts I and II of its Complaint. According to Plaintiff, Defendant's Answer does not state any defenses that bar entry of judgment for the United States. In its motion for partial summary judgment, however, Defendant argues that the statute of limitations bars Plaintiff's Count I claims as a matter of law.

## II. DEFENDANT'S MOTION FOR PARTIAL DISMISSAL
## FOR LACK OF SUBJECT MATTER JURISDICTION

In its motion for partial dismissal and its response to Plaintiff's motion for judgment on the pleadings, Defendant argues this court lacks subject matter jurisdiction to consider Count II

because Plaintiff's claim for $3,083,833 is an unresolved contract dispute governed by the procedures set forth in the CDA. According to Defendant, the lawsuit in the CFC involved Renda's claim for $906,364 in additional payment, not a counterclaim by the United States for $3,083,833. (Def.'s Mot. to Dismiss at 8.) Defendant argues that because the United States' claim for $3,083,833 has not been the subject of a contracting officer's decision and was not adjudicated in the CFC, this court lacks jurisdiction to consider Count II. Plaintiff disagrees with Defendant's characterization of the CFC decision and argues that Count II is a claim for unjust enrichment, not a contract dispute:

> Count II relies on the CFC's decision that Renda was not entitled to that amount. We are asking this Court to resolve the United States' claim that Renda was unjustly enriched by the government's payment had and received. But we are not asking this Court to resolve a government contract dispute that requires a CFC decision to ensure national uniformity in government contract law.

(Pl.'s Resp. to Def.'s Mot. to Dismiss at 6–7 (quotation omitted).) Therefore, according to Plaintiff, Count II is within the jurisdiction of this court because the CFC determined Renda was not entitled to the $3,083,833 payment.

## A. STANDARD OF REVIEW

A federal court's jurisdiction is limited and only extends to cases "arising under the Constitution, laws, or treaties of the United States," or in cases where the amount in controversy exceeds $75,000. 28 U.S.C. § 1331, 1332. A challenge to subject matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). In considering a motion to dismiss for lack of subject matter jurisdiction, a district court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or

4

(3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *St. Tammany Parish v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009) (quotations omitted). The party asserting jurisdiction has the burden of proof. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.*

As a general rule, federal district courts have original jurisdiction over "all civil actions, suits or proceedings commenced by the United States . . . ." 28 U.S.C. § 1345. However, the Contract Disputes Act of 1978 ("CDA") was enacted to narrow that jurisdiction in lawsuits between federal government contractors and the United States. *See* 41 U.S.C. § 601, *et seq*. The CDA applies to any express or implied contract entered into by an executive agency for: "(1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair or maintenance of real property; or, (4) the disposal of personal property." *Id.* at § 602 (a)(1)–(4). Under the framework created by the CDA, all disputes over government contracts are considered first by a contracting officer:

> [a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer.

*Id.* at § 605(a). The contracting officer's decision may be appealed through an agency board of contract appeals or by filing suit in the CFC. *Id.* at § 607, 609. The effect of the CDA, therefore, is to divest district courts of jurisdiction over contract disputes between the United States and federal contractors. However, nothing in the statute prevents a district court from assessing "the finality and unreviewability of an order" after the merits of the contract dispute

5

have been decided. *United States v. Kasler Elec. Co., Inc.*, 123 F.3d 341, 344 (6th Cir. 1997); *see also Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1562 n.4 (Fed. Cir. 1990) ("The government may obtain a judgment on the basis of [a final] decision in a state or federal court without litigating the merits.").

### B. ANALYSIS

In the present case, resolution of subject matter jurisdiction requires the court to consider the meaning and scope of the CFC's decision. The $3,083,833 Plaintiff seeks in Count II relates to what is known as the "Flare Area"[1] claim. As Judge Hewitt explained in the CFC opinion, Renda experienced difficulty dredging the Flare Area portion of the channel because it encountered stiff clays when it had anticipated dredging soft clays. *Renda*, 66 Fed. Cl. at 685. On February 14, 2001, Renda submitted a claim to the Corps for $3,641,643 to account for the unanticipated expenses encountered dredging the stiff clays in the Flare Area. After Renda submitted this initial claim for damages, it re-submitted a certified claim and adjusted its damages to $4,691,688. *Id.* at 686. In response, the contracting officer issued a unilateral contract modification, which increased the contract price by an amount not to exceed $3,083,833. *Id.* at 687. The Corps ultimately paid Renda the full amount authorized in the contracting officer's contract modification. *Id.* Because this amount was apparently not sufficient to cover Renda's damages, Renda filed suit in the CFC to recover $906,364 in additional damages related to its Flare Area claim. *Id.* The court determined Renda was not entitled to its $906,364 claim because Renda's interpretation of the contract was not reasonable, stiff clay in the Flare Area was

---

[1] The "Flare Area" is a portion of the Houston Ship Channel where the "width of the Channel flares out . . . to allow ships easy passage." *Renda*, 66 Fed. Cl. at 685 n.52.

foreseeable, and Renda failed to prove that it was damaged by a differing site condition in the Flare Area. *Id.* at 687–90. With respect to damages, Judge Hewitt concluded:

> the contracting officer's decision to modify the contract and ultimately award plaintiff $3,083,833, for incurring a changed condition from that shown in the contract is not final and [ ] plaintiff was required to litigate entitlement to the entire equitable adjustment amount claimed, not just the difference between the amount Renda claimed and what it was paid.

*Id.* at 690 (quotations and citations omitted). As the court explained, it's conclusion that Renda was not entitled to its claims was "particularly harsh in this case because plaintiff received several equitable adjustments during contract performance to which, in the court's view, plaintiff was not entitled under the law governing the proof of Type I differing site conditions and the evidence adduced at trial." *Id.* at 721. Thus, in deciding Renda was not entitled to its claim for $906,364, Judge Hewitt also determined that Renda was not entitled to the entire equitable adjustment allowed by the contracting officer in the contract modification. Judge Hewitt's holding is unambiguous: Renda was not entitled to it's claim for $906,364 or the $3,083,833 it received in the contract modification. Therefore, the only issue now before the court is whether the CDA requires the United States file its own administrative claim in order to recover the overpayment. The court finds that it does not.

The CDA does not require the government to file an administrative claim in any situation. *United States v. T & W Edmier Corp.*, 465 F.3d 764, 765–66 (7th Cir. 2006). Instead, all that the plain language of § 605(a) requires is that "claims by the government against a contractor relating to a contract shall be the subject of a *decision* by the contracting officer." 42 U.S.C. § 605(a) (emphasis added). Therefore when the CFC determines a contractor is entitled to less than what it claims, the government need not file a separate claim to recover the amount already paid on the

7

claim. Judge Easterbrook explained this concept succinctly in an opinion for the Seventh Circuit:

> So the contractor must submit a claim, but when the government seeks a recovery it is enough that the issue "shall be the subject of a decision by the contracting officer."
>
> The difference in language is not hard to appreciate. The contractor files a claim, which leads to a "decision"; if that "decision" is in the government's favor, no further claim is required . . . Once an administrative decision has been made, and the parties ask a court for review, it matters not which party initiated the administrative proceeding.

*Edmier*, 465 F.3d at 766. In *Edmier*, the United States brought a collection action in federal district court to enforce a decision of the Armed Services Board of Contract Appeals. *Id.* at 764–65. After completing its contract work on a reservoir, T & W Edmier ("Edmier") asked the Corps for an additional $32 million to cover the unanticipated expense of removing hazardous materials. Because the parties could not reach an informal agreement, Edmier filed a claim with a contracting officer who determined Edmier was entitled to $3.5 million and the Corps paid in full. Not satisfied with this amount, Edmier appealed the contracting officer's decision to the Armed Services Board of Contract Appeals, which decided that Edmier was entitled to only $1.9 million. The United States then filed suit in district court to recover the excess $1.6 million it had paid Edmier. According to the Seventh Circuit, "[t]he [CDA] does not require the United States to file an administrative claim . . . What is required when the government seeks payment from the contractor is not an independent claim, but a decision." *Id.* at 766.

Although the Seventh Circuit's review involved a collection action to enforce a decision of the Armed Services Board of Contract Appeals, the reasoning in *Edmier* can be applied with

equal force in the present case.² Here, Renda initiated a claim for $4,691,688 against the United States. This claim was subject to a decision by a contracting officer, who issued a unilateral contract modification. Under the unilateral contract modification the Corps paid Renda $3,083,833. Then Renda filed suit in the CFC to obtain an additional $906,364. The CFC considered the entire amount awarded in the Flare Area contract modification and determined that Renda was not entitled to the additional $906,364 it sought or the $3,083,833 it had already received. *Renda*, 66 Fed. Cl. at 721 ("Plaintiff's entitlement to those monies under its chosen theory of recovery was tried de novo in this court and plaintiff did not prevail."). Therefore, Renda, like Edmier, must repay the United States the amount it has already received.

Defendant cites several cases to support its position that the United States must file an independent claim for repayment, however, none of these cases are persuasive. In *United States v. J & E Salvage Company*, for instance, the issue was not whether the United States must file an additional claim to recoup the property mistakenly transferred in the contract for sale, but that the United States had attempted to completely circumvent the procedures of the CDA by recasting contract claims in tort language. 55 F.3d 985, 988 (4th Cir. 1995). The *J & E* analysis is not applicable in the present case because Renda's claim has already been the subject of a contracting officer's decision.

*Foley Company v. United States*, also cited by Defendant, is similarly off point. In *Foley*,

---

² The CDA places the authority of the Armed Services Board on par with that of the CFC: "the agency board is authorized to grant any relief that would be available to a litigant asserting a contract claim in the United States Court of Federal Claims." 42 U.S.C. § 607(d). As the Federal Circuit has explained, this means the Armed Services Board, like the CFC, "can, with respect to a contracting officer's decision that has been appealed to it, reduce as well as increase the award made by that contracting officer." *Assurance Co. v. United States*, 813 F.2d 1202, 1206 (Fed. Cir. 1987).

the CFC held that it did not have jurisdiction over the government's counterclaims and defenses, based on changes and differing site conditions clauses in the contract, because the claim had not been the subject of a decision by a contracting officer. 26 Cl. Ct. 936, 939 (1992). Here, the United States is not asserting any claims, defenses, or counterclaims, instead it seeks to enforce what the CFC has already decided. The only jurisdictional requirement imposed by the CDA has been satisfied. Renda's claim for damages relating to the differing site conditions was subject to a contracting officer's decision, which was rendered in the form of a unilateral contract modification. Renda appealed the contracting officer's decision to the CFC and lost. Now the United States seeks to enforce the CFC's judgment.

The only case cited by Defendant that strikes at the heart of the issue before the court is *Wilner v. United States*, 26 Cl. Ct. 260 (1992), *vacated and remanded with instructions*, 24 F.3d 1397 (Fed. Cir. 1994).[3] However, *Wilner* is also distinguishable. In *Wilner*, the court recognized the jurisdiction of the CFC to reduce or increase the award issued in a contracting officer's decision. *See id.* at 278–79. Because the court determined the sums sought by the government were the result of unilateral modifications, not the contracting officer's subsequent final decision that had been appealed, the court held that it could not allow the government to assert a claim for affirmative relief. *Id.* at 279. In the present case, however, the CFC considered Renda's Flare Area claim (the modification and claim for additional relief) as a unitary claim, not separate decisions by the contracting officer. *Renda*, 66 Fed. Cl. at 690. Accordingly, the CFC reviewed Renda's entitlement to the entire amount sought in Flare Area claim, including the amount

---

[3]On appeal, the Federal Circuit found that the CFC erred because it did not conduct a proper de novo review of the contracting officer's decision. *Wilner v. United States*, 24 F.3d 1397, 1402 (Fed. Cir. 1992).

awarded in the contract modification. *Renda*, 66 Fed. Cl. at 647. The contracting officer did not issue a decision that the United States was entitled to repayment of the $3,083,833, because none was required.

### C. Conclusion

The CDA does not prevent district courts from enforcing judgments in contract disputes between federal contractors and the United States. Because the CFC already considered the merits of the United States' claim for $3,083,833, this court has subject matter jurisdiction over Count II. Accordingly, "Defendant Renda Marine, Inc.'s Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction" (Dkt. 14.) is **DENIED**.

### III. PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff's motion for judgment on the pleadings (Dkt. 15.) and Defendant's motion for partial summary judgment (Dkt. 16.) present overlapping issues of law and fact. For ease of analysis, the court's dispositions of these motions is consolidated. The parties' contentions are discussed according to the portion of Plaintiff's Complaint to which they relate.

### A. Legal Standards

#### 1. Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), any party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). "A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co., Inc. v.*

*Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). Motions for judgment on the pleadings are "subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009). Thus, usually, the inquiry on a 12(c) motion "focuses on the allegations in the pleadings and not on whether the plaintiff actually has sufficient evidence to succeed on the merits." *Id.* (quotations omitted). When ruling on a 12(c) motion requires a court to look outside the pleadings, the motion is converted to one for summary judgment. FED. R. CIV. P. 12(d). Because Defendant's affirmative defenses require the court to consider facts outside the pleadings, Plaintiff's motion must be treated as a motion for summary judgment.

**2. Summary Judgment**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Where, as here, the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

In ruling on a motion for summary judgment, the court must not weigh the evidence and determine the truth of the matter. The only inquiry necessary "is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are any genuine

12

factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In making this determination, all doubts must be resolved in favor of the nonmoving party and any reasonable inferences are to be drawn in favor of that party. *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000).

### B. ANALYSIS

#### 1. Count I

In its motion for judgment on the pleadings, the United States argues it is entitled to judgment for $11,860,016, because the CFC held that the contracting officer's decision concerning the Corps' claims against Renda was final and conclusive. The United States argues that judgment on the pleadings is appropriate because Renda failed to plead facts sufficient to support any of its affirmative defenses. In its motion for partial summary judgment and its response to Plaintiff's motion for judgment on the pleadings, Defendant argues Plaintiff's Count I claims are barred by the statute of limitations. According to Defendant, it does not contend that Plaintiff was required to file a counterclaim with respect to Count I. (Def.'s Resp. to Pl.'s Mot. for J. on the Pleadings at 4.) Finally, Defendant states that its "remaining defenses, whether presented as set-off, estoppel, accord and satisfaction or otherwise, relate to the $259,840 owed to Renda and withheld by the Government, as indicated in the November 26, 2002 decision, but not yet applied to any amount allegedly owed Renda." (*Id.* at 5.) Therefore, this court need only consider two issues with respect to Count I: (1) whether Plaintiff's claim is barred by the statute of limitations; and (2) if Plaintiff's claim is not barred whether it should be reduced to the extent of $259,840.85.

13

### a. Statute of Limitations

The statute of limitations applicable government contract actions is found in 28 U.S.C. § 2415(a). Section 2415(a) provides alternative limitations periods for government actions founded in contract. Under § 2415(a), the government must file suit *either* "within six years after the right of action accrues *or* within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law" 28 U.S.C. § 2415(a) (emphasis added). The plain language of the statute instructs courts to apply "whichever [limitations period] is later." *Id.*

In the present case, there is no dispute that § 2415(a) provides the applicable limitations period. The parties disagree, however, about which of § 2415(a)'s provisions should apply—the six year period or one year savings clause. In addition, the parties disagree about when the statute began to run under each provision. Because the court may apply whichever limitations period is later, the court will consider each in turn.

#### i. Six Year Limitation Period

Defendant argues the government's cause of action is untimely under § 2415(a)'s six year limitation period because it accrued when the contract was breached (on September 18, 2001 at the latest). Plaintiff counters that its claims founded in contract could not accrue until a contracting officer issued a final decision (on November 26, 2002).

Although a contract claim generally accrues at the time of breach, the present case is unique because it is a suit to enforce the decision of a contracting officer, not a suit based on the merits of the contract dispute. Therefore, arguably, "[a]n action to enforce a contracting officer's decision [ ] cannot accrue until the decision is made because suit cannot commence before that

time." *United States v. Suntip*, 82 F.3d 1468, 1476 (9th Cir. 1996). As the court explained in *Suntip*:

> [T]ime does not begin to run for an enforcement action until the contracting officer renders his or her decision. Under the Contract Disputes Act, the government cannot take legal action on its claim until it first makes it "the subject of a decision by the contracting officer." Time cannot run against the government until it is procedurally possible for it to sue.

*Id.* (citations omitted). If this reasoning is applied in the present case, the government's Count I claims accrued on November 26, 2002, when the contracting officer rendered a decision demanding $11.8 million from Renda. Therefore, if *Suntip* is applied, the government's action is timely under § 2415(a), because it was filed on November 24, 2008, within six years of the contracting officer's final decision.

Defendant suggests the Sixth Circuit's holding in *Suntip* is invalidated by *United States v. American States Insurance Company*, 252 F.3d 1268, 1270 (11th Cir. 2001). In that case, the Eleventh Circuit commented that because § 2415(a) allows the government to sue within one year of any final decision in any applicable administrative proceeding, "[a]llowing the Government six years from a final decision in which to sue would render [§ 2415(a)'s] one-year provision meaningless." *Id.* Although *American States* presents an interesting contrast to the Sixth Circuit's decision in *Suntip*, this court need not determine which court is correct because § 2415(a) allows a court to apply either the six year limitations period or the one year period, whichever is later. In the present case, one year from the final decision in an "applicable administrative proceeding" is later than six years from the time of accrual whether the action accrues at the time of breach or at the time of the contracting officer's final decision.

### ii. One Year "Savings Clause"

Defendant contends that even if the one year savings clause is applied, Plaintiff's action is untimely because the "applicable administrative proceedings" ended when the contracting officer issued his final decision on November 26, 2002. Plaintiff argues the administrative proceedings were not complete until December 11, 2007, when the Federal Circuit affirmed the CFC's decision denying Renda leave to amend its complaint to challenge the contracting officer's final decision. The court agrees.

Under § 2415(a) an appeal to the CFC constitutes "an applicable administrative proceeding" that triggers the one year savings clause. *Suntip*, 82 F.3d at 1476–77. "[T]he references in section 2415 to 'applicable administrative proceedings required by contract or by law' must now be read to include a suit in the Court of Federal Claims challenging a decision of a contracting officer." *Id.* at 1477. As the court explained in *Suntip*:

> proceedings in the Court of Federal Claims can be very lengthy and are not within the control of the government. The decision of that court can change or reverse the contracting officer's decision. If the alternative clause of section 2415 is not applied to extend limitations, it is possible that the government's time to bring an enforcement action will expire before it has a final decision to enforce.

*Id.* This holding is consistent with § 2415's legislative history, which explains that the one year provision is intended to toll the statute of limitations during mandatory administrative proceedings, including "*appeals*" related to government contracts:

> [The one year] provision, which has the effect of tolling the running of the statute of limitations during mandatory administrative proceedings, is necessary because of the great number and variety of such proceedings made possible by current statutes. An administrative proceeding ordinarily consumes a considerable period of time and, as has been noted, the bill would permit the Government a year after the final administrative decision in which to present its case for judicial determination. An example of such an administrative proceeding are those which

16

involve *appeals* under the "disputes" clause of Government contracts.

S. Rep. No. 89-1328, at 2504 (1966), *as reprinted in* 1966 U.S.C.C.A.N. 2502 (emphasis added); *see also American States*, 252 F.3d at 1273. As the court explained in *Suntip*, the contracting officer's decision loses its finality when it is challenged in the CFC and cannot be enforced until after the court proceeding is concluded. *Suntip*, 82 F.3d 1477 n.11. "It is therefore logical that the one-year limitation of section 2415 begins to run [when the appeal is complete], even if the contracting officer's decision itself is the relevant final decision rendered in applicable administrative proceedings under section 2415." *Id.* (quotations omitted).

In the present case, the same is true. This court would not have had jurisdiction to consider Plaintiff's claims against Defendant until Renda's appeal of the CFC's decision denying Renda leave to amend its complaint was finalized. The decision of the Federal Circuit could have changed or reversed the CFC's decision and thereby allowed Renda the opportunity to litigate the merits of the contracting officer's decision. Accordingly, it was not possible for the government to enforce the contracting officer's decision until it was clear Renda would be barred from challenging it. The United States filed the present action on November 24, 2008, within one year of the Federal Circuit's December 11, 2007 decision. Therefore the government's action was timely under § 2415(a)'s one year savings clause.

### b. *Setoff (Offset)*

Even if Plaintiff's action is timely under § 2415(a), Defendant argues Plaintiff's claim is barred to the extent of $259,840.85 which it claims the Corps withheld from "amounts earned by and owed to Renda as a setoff for amounts the Corps stated were owed to it." (Def.'s Mot. Summ. J. at 26.) Plaintiff contends this defense should be rejected because there has been no

17

"new agreement" that could constitute an accord and satisfaction. Additionally, Plaintiff argues Defendant cannot challenge the merits of the contracting officer's decision because this court lacks jurisdiction to consider such claims. (Pl.'s Resp. to Def.'s Mot. Summ. J. at 23.)

A claim for offset in federal court is an affirmative defense. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 494 n.36 (5th Cir. 2001). Therefore to prove offset on summary judgment, Defendant must present evidence that establishes "beyond peradventure" that the Corps withheld $259,840.85 from the amount asserted in its counterclaim. *See Fontenot*, 780 F.2d at 1194. The evidence in the present case does not establish this fact. The contracting officer's decision letter states only that "[t]he amount of $259,840.85 represents the balance remaining in retainage." (Def.'s Mot. for Summ. J. Ex. B.) A "retainage" is generally defined as "[a] percentage of what a landowner pays a contractor, withheld until the construction has been satisfactorily completed and all mechanic's liens are released or have expired." *Am. States Ins. Co. v. United States*, 324 B.R. 600, 603 n.1 (N.D. Tex. 2005) (quoting BLACK'S LAW DICTIONARY 1341(8th ed. 2004). Nothing in the contracting officer's decision letter indicates that this amount is intended to offset the amounts claimed in the Corps' $11,860,016.00 counterclaim. Any attempt by this court to consider Defendant's claim for $259,840.85 would amount to a determination of the merits of the Corp's claims in Count I. Renda could have appealed the contracting officer's decision, but chose not to. Because the CDA divests federal district courts of jurisdiction to consider the merits of government contract disputes, this court will refrain from conducting such an analysis.

2. **Count II**

In its motion for judgment on the pleadings, Plaintiff seeks entry of judgment on Count II

of its Complaint because it alleges the CFC's decision binds Renda to pay the $3.1 million overpaid by the Corps. In its defense, Defendant reasserts the arguments made in its motion for partial dismissal for lack of subject matter jurisdiction. According to Defendant, this court lacks jurisdiction to consider Plaintiff's Count II claim because Plaintiff has not asserted its claims through the procedures required by the CDA. As discussed above, however, the government was not required to assert a separate claim for $3.1 million. The CFC considered Renda's entire Flare Area claim and Renda was not entitled to either the amount paid or the additional amount sought. The litigation in the CFC satisfied the requirements of the CDA and this court has subject matter jurisdiction to consider Count II.

Defendant also argues that Plaintiff's Count II claims should be barred by the statute of limitations because "[i]f the Government asserts its $3,083,833 overpayment claim through the proper channel of administrative proceedings, the claim will be barred by the CDA's statute of limitations." (Def.'s Resp. to Plaintiff's Mot. for Judgment on Pleadings at 28.) Because this court has already determined an additional claim for the amount overpaid was not necessary, it need not consider what would happen if Plaintiff were required to assert claims through the CDA's administrative procedures. Defendant's CDA statute of limitations argument is, therefore, inapposite.

## C. Conclusion

For the reasons set out above, "Plaintiff United States' Motion for Judgment on the Pleadings" (Dkt. 15.) is **GRANTED**, and "Defendant Renda Marine, Inc.'s Motion for Partial Summary Judgment" (Dkt. 16.) is **DENIED**.

## IV.  CONCLUSION

In this action, the United States seeks the entry of judgment on two claims asserted against Renda Marine, Inc.  Because Plaintiff has already satisfied the administrative requirements of the CDA and timely filed suit in this court, there are no fact issues regarding Plaintiff's claims.  Accordingly, "Defendant Renda Marine, Inc.'s Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction" (Dkt. 14) is **DENIED**, "Plaintiff United States' Motion for Judgment on the Pleadings" (Dkt. 15) is **GRANTED**, and "Defendant Renda Marine, Inc.'s Motion for Partial Summary Judgment" (Dkt. 16) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this the 30th day of September, 2010.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE